# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ] | |
| ] | |
| v. ] | **CR-02-BE-0249-S** |
| ] | |
| **DEWEY M. HAMAKER,** ] | |
| **LINDA M. HAMAKER, and** ] | |
| **MORGAN CITY** ] | |
| **CONSTRUCTION, INC.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

This matter comes before the court on the Defendants' Objections to the Magistrate's Report and Recommendation (doc. # 188). On May 11, 2004, Magistrate Judge Harwell Davis filed his Report and Recommendation (doc. # 183) on the Defendants' Renewed Motion for Judgment of Acquittal (doc. # 162). The court reviewed the numerous and extensive briefs from both sides filed before and after the magistrate's report, and conducted a separate hearing. While the court adopts the Report and Recommendation, this memorandum expands upon certain portions of the Report and emphasizes the basis for denial of the Renewed Motion for Acquittal.

Specifically, the court adopts the factual and procedural recitations, the legal analysis, and the conclusion that the suppressed documents were not material to the Defendants' convictions related to the <u>Guntersville project</u>. The court concurs with Judge Davis that the Renewed Motion for Judgment of Acquittal should be DENIED. However, the court writes to emphasize that, if it erred in finding inadequate evidence to support a conviction or require consideration of the

broader conspiracy allegations in sentencing, then a more thorough analysis should be done concerning the suppressed documents as a whole and the cumulative effect that information could have had on those broader issues at trial.

Procedural Posture

The Defendants, Dewey Hamaker, his wife Linda Hamaker, and their business Morgan City Construction, Inc. were convicted in October 2002 of conspiracy and fraud.[1]  The charges arose from work performed by Morgan City Construction for Community Bank.  The indictment charged that the Defendants conspired with others to obtain money from Community Bank in Count One, and in Count Two that the Defendants executed a scheme to defraud the Bank by false and fraudulent pretenses.  The Government contended that, while performing work at various Community Bank locations, the Defendants improperly billed the Bank approximately $1,685,000.00 for work actually done at other locations, including the palatial ranch of Kennon Patterson, Sr., Chief Executive Officer of Community Bank.

After returning guilty verdicts on Counts One and Two, the jury then decided the forfeiture count, Count Three.  The jury found that the Defendants should forfeit to the Government $178,500.  The court, in a written opinion, overruled the Defendants' motion for acquittal or new trial (doc. # 127, doc. # 109).  In both the written opinion and subsequently when sentencing the Defendants, the court noted that the jury's forfeiture verdict of $178,500

---

[1]The court submitted a general verdict to the jury.  Given the breadth of the conspiracy alleged and the concerns about the sufficiency of the Government's proof as to these Defendants, a different verdict form probably should have been used.  Interrogatories to the jury probably could have alleviated some of the issues faced by this court in ruling on post-trial motions and at sentencing, and now being faced on appeal.  However, neither side requested a special verdict form, and the court, inexperienced at the time, did not think about using one.

precisely met the amount by which the Government proved the Defendants overbilled the Bank on one project – the Guntersville branch project. The evidence showed that the Defendants ceased work on the Guntersville branch project but pursuant to direct and precise instructions from Larry Bishop, Bank vice president in charge of construction, they submitted invoices to the Bank for work on the Guntersville branch. The invoices chargeable to that project issued after work stopped there totaled $178,500.

The court specifically found that the Government failed to present evidence sufficient to establish beyond a reasonable doubt that these Defendants conspired to or defrauded the Bank on any other projects or any other bills they submitted. The evidence also was insufficient to find that these Defendants had knowledge of any alleged greater conspiracy to defraud the Bank by Patterson and Bishop.

The Report and Recommendation evaluated the non-disclosed documents in terms of their impact on the evidence regarding the Guntersville project. The court agrees that, regardless of any right the Defendants may or may not have had to the non-disclosed documents, the Defendants were not prejudiced by the failure to disclose those documents *as to their conviction regarding the Guntersville project*. If, however, the court erred in sentencing the Defendants based upon the conclusion that the conviction was limited to the Guntersville project, then further consideration should be given to the overall impact of the non-disclosure of these documents, which the Government admits it would have disclosed to the defense had counsel known of their existence. This critical concern prompted the court to write specially, to convey emphatically that the denial of all of the Defendants' alternative requests for post-trial relief rests on a firm assessment that the Government failed to meet its burden of proof to sustain a

conviction on anything other than the overbilling for the Guntersville project, and that the evidence was insufficient to bring the full amount of the conspiracy as charged to bear on the Defendants' sentence.

The Report and Recommendation evaluates each withheld document in light of whether it is a Jencks Act statement or *Brady* material. Regardless of whether the withheld documents were technically Jencks or *Brady* materials, counsel for the Government admitted that the undisclosed materials <u>should</u> have been provided to defense counsel under standard procedures. Indeed, Government counsel acknowledged that the practice in the Northern District is to provide 302's to defense counsel, though technically not Jencks statements. In fact, Government counsel represented to defense counsel that all such material had been provided.[2] Because the Government conceded that these 302's, though technically not Jencks Act materials, should have been disclosed, the court will apply the same standard applicable to withholding Jencks Act materials to determine whether a remedy is warranted for the failure to disclose.

In a post-trial evaluation of the effect of failure to disclose Jencks Act materials, the court must consider whether the failure to produce was harmless error. *United States v. Beasley*, 2 F.3d 1551, 1557 (11th Cir. 1993). The harmless error doctrine must be strictly applied. *Id.* The court agrees that to the extent any of the withheld documents were treated as though Jencks material, the Government's failure to produce was harmless to the Defendants' conviction for the

---

[2]For example, the day before trial began, Sunday, October 20, 2002, Government counsel discovered that a June 21, 2001, report of interview ("302") with Government witness Michael Bean and the June 28, 2001, transcript of grand jury testimony of FBI Analyst Norman "Pete" Odom had not been provided to the defense, and gave those statements to defense counsel the next day. Government counsel also represented to defense counsel, in the chambers of the undersigned, that all such materials had then been provided to defense counsel.

Guntersville project. The court, however, has not considered whether the cumulative effect of the withheld document could be deemed harmful to a conviction for the broader conspiracy because the court found the Government's evidence lacking in that regard.

The Defendants asserted that some of the withheld documents included *Brady* material. Perhaps the best discussion of current *Brady* law is found in *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). The Court explained that "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the Government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" 514 U.S. at 433-34, quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). This standard of materiality "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . . ." 514 U. S. at 434. The focus, then, is on a "reasonable probability" of a different result. "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.*

The Court also noted that the inquiry does not involve a sufficiency of the evidence test. *Kyles*, 514 U.S. at 435. "[T]he question is not whether the [prosecution] would have had a case to go to the jury if it had disclosed the favorable evidence, but whether we can be confident that the jury's verdict would have been the same." *Id.* at 453.

The court notes that the evidence suppressed in this case, even though a large number of documents,[3] does not rise to the level of exculpatory evidence found to justify a new trial in other

---

[3]Although the Government turned over approximately 100 documents during the appeal, many of those documents had previously been made available to the defense. Government counsel conceded at oral argument that at least twenty-one documents were not disclosed that

5

cases. See e.g., *Kyles*, 514 U.S. at 455 ("cases in which the record reveals so many instances of the state's failure to disclose exculpatory evidence are extremely rare." J. Stevens, concurring).

The materiality of the suppressed evidence must be evaluated collectively, not item by item. *Kyles*, 514 U.S. at 436. The court agrees with the analysis in the Report and Recommendation of each document on an <u>individual basis</u> and concludes that no one piece of suppressed evidence undermines confidence in the jury's verdict on the <u>Guntersville project</u>. Further, the cumulative effect of the suppressed evidence cannot be said to create a reasonable probability that the result would have been different as to the convictions for <u>Guntersville project</u> because so little of the suppressed evidence bore any relevance to that portion of the Government's case.

However, the court has always been troubled by the weakness of the Government's overall case against these Defendants. Credibility of the Government's witnesses and the Defendants was a key – if not the key – issue in this case. Granted, none of the suppressed materials revealed outright contradictions in the witnesses' prior statements and their trial testimony so as to be definitive impeachment material. See Report and Recommendation pgs. 38-61. However, the suppressed materials contained information that <u>could</u> have been used to disclose additional chinks in the Government's case on the broader conspiracy claims. The court cannot definitely state that the cumulative effects of the suppressed information would not have raised enough questions as to "put the whole case in such a different light as to undermine the confidence in the verdict." *Kyles*, 514 U.S. at 435. Because the court previously found the Government's evidence against the Defendants insufficient to sustain a conviction except as to

---

should have been disclosed prior to trial.

the Guntersville project, it pretermits any discussion of the cumulative effects of the suppressed evidence on any other allegations.

Throughout the Report and Recommendation, the magistrate judge analyzed the materiality of the suppressed information in light of the conviction based on the Guntersville project. See Rep. & Rec, doc. # 183, pages 40 ("The Hamakers were convicted of providing invoices to and accepting payments from Community Bank for work on the Guntersville Bank project which was never performed."); p. 43 ("There was more than sufficient evidence to convict the Hamakers based on their interaction with Bishop and their submission of false vouchers for the Guntersville project."); p. 44 ("this information has no impact on the Government's evidence which reflected that defendants repeatedly billed Community Bank for work on the Guntersville site when no work was actually performed."); p. 45 ("The fact . . . does not . . . impact the guilt or innocence of the Hamakers for fraudulently billing the bank for the Guntersville project."); p. 51 ("The fact . . . does not prove anything one way or the other with regard to the Hamakers' submission of fraudulent invoices for work not performed at the Guntersville site."); p. 55 ("the trial court held . . . that the jury limited their finding of guilt to the Guntersville project billing for work never performed . . ."); p. 60 ("The jury found that the Hamakers improperly diverted only $178,500 by charging for work on the Guntersville site that never occurred.")

The court agrees with the analysis in the Report and Recommendation that the suppressed information was not material to the conviction for the Guntersville project.  This court previously held the Government's evidence insufficient for conviction <u>except</u> regarding the Guntersville project.  See doc. # 127.  The court sentenced the Defendants based on its finding that the

Government only produced sufficient evidence of their participation in and knowledge of a conspiracy regarding improper billing of the Guntersville project and bank fraud as to that project. (See doc. # 135, 138; transcript of sentencing doc. # 159).

In the course of reviewing the Defendants' Renewed Motion for Judgment of Acquittal, the court has reviewed the evidence submitted in this case, and remains convinced that the Government failed to present sufficient evidence to support the indictment <u>except</u> as it related to the Guntersville project. The court adopts the conclusions in the Report and Recommendation that the suppressed information was not material as to the conviction for the Guntersville project.

However, if the court erred in concluding that only the convictions relating to the Guntersville project could stand and, therefore, only those facts should be considered for sentencing, then a different analysis needs to be conducted concerning the cumulative effect of the suppressed documents. In other words, this court has not considered whether the cumulative effect of the withheld information "'undermines confidence in the outcome of the trial,'" *Kyles*, 514 U.S. at 434, as to anything other than the Guntersville project.

A separate order will be entered contemporaneously.

DONE and ORDERED this 19th day of January 2005.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE